**Mayajoe** <mayajoe@optonline.net>   4/1/21 8:28 am

To mayajoe@optonline.net mayajoe@optonline.net <mayajoe@optonline.net>

APR 9 2021 PM12:47
FILED-USDC-CT-NEW HAVEN

3:21CV498 (KAD)

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

---

KEVIN DiMARTINO, MICHAEL MILCHIN, STEVEN PAGARTANIS, KENNETH PELLETIER, JOHN MATERA, EUGENE CASTELLE, ON BEHALF OF THEMSELVES AND ALL OTHER SIMILARLY SITUATED PLAINTIFFS

v.

D. EASTER, WARDEN FCI DANBURY, CURRENT UNKNOWN ACTING WARDEN OF FCI DANBURY, FCI DANBURY MEDICAL STAFF, FEDERAL BUREAU OF PRISONS
DEFENDANT

---

MOTION BY: Inmates in the custody of B.O.P. currently residing at FCI Danbury who have serious medical concerns that are not being addressed, on behalf of themselves and other similarly situated inmates residing at FCI Danbury.

RELIEF REQUESTED: An expedited order granting home confinement to plaintiffs who suffer from serious medical concerns, or are at risk of serious medical concerns so they may address these medical concerns.

Kevin DiMartino, Michael Milchin, Steven Pagartanis, Kenneth Pelletier, John Matera, Eugene Castelle (collectively, "Plaintiffs") are current inmates at FCI Danbury. Plaintiffs file this action on behalf of all current and future inmates who are in the custody of B.O.P at FCI Danbury. Plaintiffs allege systemic inadequacies in medical care has resulted in deliberate indifference in the provision of medical care and that this lack of care violates the Eights and Fourteenth Amendments.

Plaintiffs bring this putative class action pursuant to 28 U.S.C. 2241 for relief from detention that violated their Eighth Amendment rights under the Constitution of the United States. The court has subject matter jurisdiction over these claims pursuant to 28 U.S.C. 2241, 28 U.S.C. 1651, Article 1 sec 9, cl 2 of the U.S. Constitution and 27 U.S.C. 1331.

At this time the plaintiffs filed this document Pro Se, "A document filed pro se" like the complaint here "is to be liberally construed and a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers" Boykin V. KeyCorp, 521 F.3d 202,214 (2d Cir. 2008) Courts must construe pro se pleadings broadly and interpret them "To raise the strongest arguments that they suggest." Graham V. Henderson, 89 F.3d 75,79 (2d Cir. 1996) According to Cruz V. Gomez, 202 F.3d 593,597 (2D. Cir 2000) the court should liberally construe pro se pleadings and drawing all reasonable inferences in the pro se litigants favor.

Plaintiffs claim 8th Amendment Right violations by D. Easter in her capacity of Warden of FCI Danbury, Current unknown acting Warden, of FCI Danbury, FCI Danbury Medical staff, and the Bureau Of Prisons by way of deliberate indifference to serious medical needs. Judicial precedent has long made clear the standards for claims alleging failure to provide medical treatment to a prisoner: Deliberate indifference to serious medical needs.

To demonstrate deliberate indifference to a serious medical needs claim, the condition must be a condition of urgency, one that may produce death, degeneration, or extreme pain.

The Second Circuit has offered the following non-exhaustive list of factors to consider when evaluating an inmates medical condition:
(1) Whether a reasonable doctor or patient would perceive the medical need in question as important and worthy of

comment or treatment,
(2) whether the medical condition significantly affects daily activities, and
(3) the existence of chronic and substantial pain.

As noted in Whitted V. Easter 3:20-CV-00569 (D. Conn. 2020), all inmates at FCI Danbury face a particular acute threat of illness, permanent injury, and death. The open-barrack characteristically described as "dormitory" setting is the majority of the institution renders it impossible to engage in the necessary social distancing and hygiene required to mitigate the risk of transmission of COVID-19, and the prison's continued purposeful impeding of meaningful implementation of a temporary restraining order in the above referenced class action lawsuit, Whitted V. Easter, demonstrates a real risk faced by the putative class. In addition, the prisons lack of screening, ongoing care, and follow up care for those with serious medical conditions puts inmates at risk for injury or death.

As a condition of a settlement agreement reached in Whitted V. Easter, the B.O.P. agreed to review inmates for consideration for home confinement. It has been observed and noted by inmates that individuals have been transferred to home confinement (some with little to no CDC risk factors or serious medical conditions) while others with multiple CDC risk factors and serious medical issues have languished in the facility not receiving proper medical care.

CLASS CERTIFICATION
Under Federal Rule of Civil Procedure Rule 23(a), a party seeking class certification must demonstrate the following prerequisites: (1) numerosity of plaintiffs; (2) common questions of law or fact; (3) typicality of named plaintiff's claims; and (4) ability of the named plaintiff to protect the interests of the class adequately.

Plaintiffs assert that they meet the four criteria for certification as a class. (1) the numerosity of persons with serious medical conditions - the plaintiffs named in this filing all reside in merely one housing unit at FCI Danbury, this list is not all inclusive to identify and include class members throughout all 10 housing units. (2) Each plaintiff has suffered through Eighth Amendment right violations at the hands of FCI Danbury administration / medical staff. (3) Plaintiffs claims of deliberate indifference to their serious medical concerns are documented below. (4) although the named plaintiffs may represent and protect the interests of the class adequately, the class is asking for appointment of counsel to enable filings are submitted efficiently and in accordance with local court rules. Due to continued COVID-19 lockdown status, plaintiffs lack the proper equipment for preparing and submitting filings in a manner that is appropriate and respectful to the courts time.

In this request for relief, plaintiffs request the following:
1. Certification of this petition as a class action with the definition of "prisoners who are now, or will in the future be, subjected to the medical care policies and procedures at FCI Danbury at both the male and female facilities."
2. Appointment of counsel for the class to prepare further filings and represent the class in proceedings that meets the courts' standards for filing and efficiency in order to not waste the courts' time throughout the proceedings.
3. Transfer to home confinement for those class members that have serious medical concerns that are not being addressed at FCI Danbury, so those individuals can obtain timely, competent medical care.
4. Any further relief that the court deems necessary.

FACTUAL ALLEGATIONS
Plaintiffs allege that the Defendant(s) maintains and runs a health care system that "lacks basic elements necessary to provide constitutional care" and fails to diagnose serious conditions, provide timely care, administer appropriate medications, employ adequate staff, and identify and correct its own failings.

Plaintiffs allege that the Defendant maintains a gross amount of a backlog of pending sick call requests, that it is incapable of providing daily sick call triage. This backlog puts prisoners at a risk of serious harm because they often are without the care they requested. Prisoners therefore enter repeated sick-call requests for the same condition(s). Delays in access to care can result in serious harm. Plaintiffs allege that this condition existed pre COVID, and continues to this date. Whitted v. Easter documents some of the failings of the FCI Danbury medical system. Recently a plaintiff was seen a month after a sick call request was placed, with the medical provider indicating that he was happy that the medical concern has passed.

Plaintiffs allege that FCI Danbury is chronically understaffed in reference to medical personnel. The recent loss of Dr. Schindler makes the situation more grave for inmates as there are even fewer staff to address concerns.

Plaintiffs allege that the defendant lacks the proper procedures to provide inmates with timely referrals to specialists. For example, a patient waited a year for a referral for a CT scan, that scan did show an unknown, abnormal growth (that the hospital recommended in the CT scan results that further testing be performed on) now that patient has waited 7 months since the discovery of that abnormal growth with no follow up to date.

Plaintiffs allege that they do not receive sufficient follow-up, monitoring, specialty referrals or proper care.

MEDICAL CARE AT FCI DANBURY - COVID-19

Although some members of the class may have already received the vaccine for COVID-19, the uncertainty of the effectiveness of the vaccine against the ever growing threats posed by exotic mutated variants, along with the scientific fact that NO VACCINE is 100% effective, class members continue to be put at risk on a daily basis. This filing is not specifically for COVID-19, as the claims brought forth by the plaintiffs are for serious medical concerns that are not being addressed, however, COVID-19 is still a concern for prisoners at FCI Danbury. Given the track record of disregard and non-compliance to policies, procedures and orders from the Attorney General and a Second Circuit Judge, the plaintiffs still fear for their health and safety during this pandemic. Ever emerging variants are once again bringing the country to it's knees with a large number of states reinstituting lock down policies.

On December 2, 2020 B.O.P. director Michael Carvajal testified before a house committee that the B.O.P. has "implemented a comprehensive action plan to protect the health of inmates in our custody..." That next week, the B.O.P. reported a 30% INCREASE in COVID-19 positive cases. Apparently, the comprehensive plan to protect the health of inmates was not enough.

According to recent testimony before the House Subcommittee on Science, Justice and Related Agencies by Michael Carvajal, Director of the B.O.P, all of the B.O.P. staff have been offered the vaccine, yet MORE than 50% of the staff have DENIED the vaccine. The failure of B.O.P. personnel to take the vaccine puts not only them and their families at risk, but each and every person he/she interacts with. With HIV, if one willingly passes it on to someone, one can face criminal charges. Who will be responsible when STAFF who REFUSED to take a vaccine, contract the virus, infect others and the others become sick or die? According to Deshanev V. Winnebago Co. Dep't Soc. Services 489 U.S. 189,199-200 (1993) "When the state takes a person into its' custody..., the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and wellbeing." Clearly, the B.O.P. has FAILED at its' duty to ensure the safety and wellbeing of inmates in their care. The families of each one of the sick and dead inmates would agree that their loved ones were not properly protected. By FAILING to inoculate the ENTIRE staff of the B.O.P. they are putting people at an unnecessary risk.

MEDICAL CARE IN THE B.O.P. - Serious Medical Concerns

It is well known that the B.O.P fails when it comes to competent and timely medical care. A recent article in PRISON LEGAL NEWS March 2021 (Reuters Investigation: Lamentable Medical Care in Jails and Prisons Exposed During Pandemic) reports the following: "Very few criminal offenses in America allow for a sentence of death. Nevertheless, too many people are dying in jails and prisons while serving a sentence or simply waiting for the process to slowly grind its way to a resolution." (Administrative remedy process) "Hundreds have died from complications of what are normally routine medical issues like diabetes or blood clots due to lack of adequate medical care - and this was before COVID-19." "...Covid put the national spotlight on (prison) populations and the need to prevent needless deaths in facilities where adequate health care is lacking in the best of times."

Prisoners are guaranteed a right to medical care, unfortunately the level of care is subjective. Prisons often do the "bare minimum" to get by. Person with serious medical issues cant survive with the "bare minimum". Here are some of the serious medical issues faced by some men of ONLY 1 (out of 10) housing units at FCI Danbury:
Sent from my Verizon, Samsung Galaxy smartphone

**Mayajoe <mayajoe@optonline.net>**                                                                                   4/1/21 8:27 am

To mayajoe@optonline.net mayajoe@optonline.net <mayajoe@optonline.net>

### KEVIN DIMARTINO

Mr. DiMartino is a 41 year old obese man (who has lost 80 lbs so far in B.O.P. custody), he suffers from asthma, hypertension, hyperlipidemia, sleep apnea, and chronic back pain (he has a referral pending for neurosurgery -the status was marked as "Deferred"). His painful chronic back pain is due to disc damage in his lower back. This condition was being addressed with pain medication prior to him being in B.O.P custody. His private physician noted that he does not abuse pain medications. The B.O.P. does not address pain in any meaningful manner. OTC type medications are all that is available for pain. In spring 2019, Mr. DiMartino injured his shoulder, he felt and heard a pop in his left shoulder. A subsequent visit to medical resulted in a diagnosis for "carpal tunnel". The medical professionals dismissed Mr. DiMartinos claims that there was a problem with his shoulder as he reported. Mr. DiMartino suffered pain when lifting his arm, dressing and undressing, and pain while laying down on his side or back. He had to sleep on his stomach with his arm tucked underneath him to prevent movement. Nearly 9 months later, he was finally given an X-Ray of his shoulder. (An x-ray would not show soft tissue damage). The arm has healed with restricted range of motion and pain for certain movements. In May 2020, Mr. DiMartino injured his knee jogging on the rec yard. The uneven and unpaved track is often "rutted" up after a rain. Mr. DiMartino's knee would often "give out" as he was walking and there was a constant sharp pain that did not subside no matter what position he placed the knee into. Mr. DiMartino reported the condition and was eventually seen. Medical personnel instructed him to "just don't jog". He requested a knee brace and was denied, the only course of treatment was a prescription for 800mg ibuprofen. Ten days after his visit to medical, Mr. DiMartino wrote to medical stating that the prescription still was not available at pill line. It was a total of FIVE weeks after his appointment that the medication was available for him. In July 2020, Mr. DiMartino reported excessive loose stools and blood in his stool. A fecal sample tested positive for blood. A referral for a colonoscopy was entered and a change to his prescription was ordered. (Regional B.O.P. denied that medication request.) Further sick call slips were entered and he was seen again by medical staff for the problem, Dr. Greene expressed his concern that Mr. DiMartino may have colon cancer. In September, Mr. DiMartino received a copy of his medical records (that he requested) and was surprised to learn that monthly blood tests indicate that he is anemic, and that a previous CT scan (which took about a year to obtain and was targeting his back for the extent of the disc issues) discovered and abnormal growth of 3.1cm and the report suggested follow up to determine for possible malignancy. If Mr. DiMartino was not on top of requesting and reading his medical records, he would not have known about these conditions, nobody in the facility informed Mr. DiMartino of his medical issues. Starting in August 2020, Mr. DiMartino (and many others throughout the compound) had a debilitating, bloody bruising rash that manifested itself with sub dermal bruising, bumps on the skin, bloody discharges and extreme "itchiness". This itchiness would often be so overwhelming that Mr. DiMartino had difficulty sleeping. A number of different reason were given as the potential reason for the rash, a problem with the laundry facilities, eczema, mites, dermatitis, etc. Treatments didn't work and Mr. DiMartino was suffering through this for months. No blood or skin samples were obtained to be analyzed. In October 2020, Ms. DuKate from FCI Danbury medical stated "we don't know what it is" and she proceeded to photograph Mr. DiMartino's body to send the photos out for consultation. The photos do not show the full extent of the condition as most of the condition was "below the belt" in the groin and leg area. Ms. Dukate did not want photos taken of inmates bodies in that fashion. Mr. DiMartino told her, "It's for a medical reason, I don't care... take the photos." As of this date, medical has not followed up with the results of the photos taken. In November 2020 Mr. DiMartino reported pain on his left side while laying on it. He was eventually seen by Nurse Escobar. Escobar opened the conversation with, "Just don't jay on your left side." Escobar proceeded to bring up an internal diagram of organ anatomy and said "look there's not much on your left side, if it was your right side I'd be concerned..." Mr. DiMartino became upset and assertive with Nurse Escobar and informed Escobar that he has had problems with diverticulitis in the past, is waiting for a colonoscopy and has an unknown growth that was recently discovered. Escobar stated that "somebody dropped the ball on your file", he requested a medication change and re-ordered the colonoscopy. The medication was refused by regional B.O.P. and the colonoscopy still has not been performed. From July through now, Mr. DiMartino has had panic attacks and increased anxiety due to the worry on his medical condition. Some of these have been notated in his medical records. Recently, Mr. DiMartino has a fever for two days and reported a sore throat and earache, it was a month before he was seen by a provider, with the provider being happy that the condition cleared up. Mr. DiMartino has been on a wait list for a sleep study for his Sleep Apnea, since he arrived at FCI Danbury in August 2018, even though he obtained outside medical records diagnosing him with the condition and repeated requests to forgo the sleep study and issue a machine. Mr. DiMartino has been waiting on

a dental care waitlist since his intake at FCI Danbury for dental care. On a daily basis, Mr. DiMartino suffers from pain, fear and anxiety over his unknown medical issues, frustration at the staff for their neglect of his situation. The worry and anxiety, although mental, have a negative effect on his overall physical health.

### MICHAEL MILCHIN

Mr. Milchin is a 40 year old male. He suffers obesity, asthma and a skin infection since august 2020. Mr. Milchin has been told 4 times he has scabies and has been given Ivermectin pills over and over to kill a parasite he does not have. Milchin has scars now on his hands, arms, fingers, legs, trunk, waist line and private parts due to the lack of treatment at Danbury; it got so bad that medical asked to take pictures of Milchins body and send it to Washington, central office for diagnosis rather then send Milchin to a outside medical specialist. Medical has been concerned about a infection on Milchins nose that in February had a biopsy done to rule out skin cancer.The sample was lost by the medical staff at Danbury which left Milchin with a scar on his nose the size of a nickel.To this day no follow up has been ordered to find out what is going on with the infection or cancer. Also suffers from anxiety and with the skin infection is in pain all day and sleep is almost impossible.

### STEVEN PAGARTANIS

Mr. Pagartanis is a 61 year old man that has been an inmate since January, 2020. He suffers from diabetes, hypertension, hyperlipidemia, and mental health concerns. Mr. Pagartanis relies on FCI medical to dispense the insulin that he needs to manage his diabetes. Pill line in not always at a consistent or predictable time, putting Mr. Pagartanis at risk on complications due to his diabetic condition. FCI Medical staff have changed Mr. Pagartanis's medication without his input of permission. He has gone as far as a month without medications for his depression and insomnia. Mr. Pagartanis has waited months for a consultation with the staff psychiatrist do he could get his medications adjusted. The policies and procedures, as well as chronic understaffing and backlog of medical care has cause Mr. Pagartanis is injured through increased depression and sleeplessness. Frustration with the lack of care feeds into the depression and raises his anxiety. Potential complications from his diabetes may arise by not having proper, timely access to insulin.

### KENNETH PELLETIER

Mr. Pelletier is a 57 year old man suffering from hyperlipidemia, hypertension, obesity, wide angle glaucoma, and an untreated large cystic mass in the neck that requires surgery. Prior to his intake at FCI Danbury (while at another B.O.P. facility, Mr. Pelletier was evaluated for a large cystic mass (measuring 5cm x 6cm) on his neck. Since his intake at FCI Danbury in September, 2020, he has received an "urgent" referral for outside medical care for surgery consultation. This "Urgent" consultation has not been completed to this date. This mass currently affects Mr. Pelletier on a constant, daily basis by impacting his breathing, swallowing, ability to sleep and his blood pressure.

### JOHN MATERA

Mr. Matera had COVID-19 on April 1, 2020. After his diagnosis, he developed bad kidney pains and he also developed a lump in his throat in his lymph node area; this has made his breathing and swallowing difficult. Mr. Matera was referred for an outside appointment for a CT scan for both his kidney and throat; this has been pending since June 2020. Mr. Matera continues to file sick call slips and complain to medical staff, yet no furtherance of his situation has occurred. Mr. Maters suffers pain each day/ He is frustrated that he cannot get a straight answer from anyone. Mr. Matera is a chronic care patient, suffering from hypertension, hyperlipidemia, and has gout. Nothing is under control. FCI Medical staff have been changing Mr. Matera's medication but cannot get his hypertension under control.

### EUGENE CASTELLE

Mr. Castelle is a 61 year old man with Asthma, obesity, and an unknown skin rash. Mr. Castelle was hospitalized in March 2020 due to complications of COVID-19; he has scarring of the lungs and shortness of breath. Mr. Castelle was referred to outside medical for an ultrasound in 2020, and it's still pending.

The plaintiffs request that the court order the B.O.P. to turn over all medical records for the named plaintiffs in this filing for the use in this case. The plaintiffs assert that the policies and procedures in place (whether formal or not) at FCI Danbury unnecessarily create a time and financial penalty for inmates who request their medical records. Records of blood tests, medical encounters, pathology reports, CT scans, etc. are not provided at the time of encounter or completion of test. Inmates must file a medical records request that can take up to 60 days from the date of request. In addition FCI Danbury procedures may subject the inmate to a financial burden to obtain copies of labs, encounters, CT scans, etc.

The plaintiffs acknowledge that the COVID-19 pandemic may throw a proverbial wrench into the normal operations of the medical care, but preventative and diagnostic care should still be performed for these serious medical issues. For the named plaintiffs, COVID-19 is a concern of course, but of more importance is the condition that they currently have and are suffering with on a daily basis. These men have lived thru COVID-19 in the custody of the B.O.P at FCI Danbury. These men have witnessed neglect, indifference and death at the hands of B.O.P. personal. The named plaintiffs have no faith or trust in the policy/procedures or staff at FCI Danbury with regards to their medical care. The plaintiffs request a injunction granting relief so each named plaintiff can address his serious medical concerns in accordance with competent, established current medical practices and techniques with professionals in their communities.

COVID-19 UPDATE
Although tens of millions of persons in the United States have successfully been administered a COVID vaccine, on March 20,2021 the CDC director stated that "eminent doom " is around the corner due to the forth wave of COVID-19 infection. The northeast corridor is currently the worst part of the country with the new COVID-19 variants which are deadlier and more transmittable. These inmates are in danger everyday at Danbury.

HOME CONFINEMENT WORKS
According to testimony by Michael Carvajal, only 21 people sent home have returned to prison. Only one of those was for new criminal conduct. The others were sent back for violations of conditions.

The named petitioners herein are aware of the consequences of failing to adhere to court and probation ordered conditions. The named plaintiffs in this complaint want the ability to address their serious medical needs, not commit new crimes. Each day that the plaintiffs remain at a B.O.P. facility, their serious medical concerns grow graver. At some point, irreparable harm or death will occur; without access to proper medical care and diagnosis the irreparable harm may have already occurred.

Sent from my Verizon, Samsung Galaxy smartphone



Maya Milchin
93 Alhambra Dr.
Oceanside, NY 11572-5425



PLACE STICKER AT TOP OF ENVELOPE TO THE RIGHT
OF THE RETURN ADDRESS. FOLD AT DOTTED LINE
CERTIFIED MAIL

7020 1290 0000 4761 8191





U.S. POSTAGE PAID
FCM LG ENV
OCEANSIDE, NY
11572
APR 02, 21
AMOUNT
$4.80
R2303S100637-09

1000   06510

U.S. District Court of Connecticut
ATTN: Clerk of Courts
141 Church Street
New Haven CT. 06510

ATT: Clerk of Courts